at all, at the least, by Joanne Bristow. Ms. Petulli, you may proceed. Thank you. May it please the Court? Briefly, some background. In February 2006, a plaintiff purchased a home in a common interest community from Hartz Construction Company, and thereby became a member of the Como Neighborhood Association and the Lago Vista Master Association. Shortly after moving in, she discovered that there was no reserve fund for the common property. Although, Hartz collected three months of assessments from each purchaser at closing expressly for a reserve fund, and although the declaration required that a reserve fund be established at the beginning of the association in December 2004. Hartz was using these reserve contributions to cover operating deficits, but for all of 2006, 2007, and most of 2008, Hartz denied that it owed the association these funds. She also discovered that the association's boards, which were of course appointed by Hartz, consisted of Donald Hartz as president and Linda Hartz as secretary and registered agent, but they were not holding any open board meetings and they were not keeping any minutes. She wrote a letter to Donald Hartz about her concerns, but received no response. Plaintiff also protested when the defendants' entry to law were telling all association members, orally and in written material, that the association would not be turned over to homeowner control for a minimum of five years or until all the lots were sold. In March 2007, defendants imposed a blanket waiver and indemnification of liability as a precondition for the use of the clubhouse facilities. Plaintiff objected to the waiver on several grounds, and as a result, she was verbally abused when she entered and she was ejected and barred from the use of the clubhouse facilities. In August 2007, when it was time for the Como Association to be turned over from Hartz Control to homeowner control, plaintiff ran for the board. Linda Hartz presided over the election in her careful official capacity as an officer of Hartz Construction Company, the Hartz-appointed Como Board, and the Hartz-appointed Master Board. Immediately before the vote was taken, Linda Hartz announced to the approximately 250 voters present that because Joanne Petula had not signed the waiver, quote, we could have her arrested at any time and let off in cuffs. The only reason we don't have her arrested is because the media would get hold of this, and how would it look to have an over-55 member let off in cuffs? She is jeopardizing all of you. I think you should take this into consideration when you vote, end quote. In July 2008, plaintiff filed a verified complaint with jury demand for slander, intentional infliction of emotional distress, and fiduciary breach against Linda and Donald Hartz and under the Consumer Fraud Interceptive Practices Act against Hartz. At December 1, 2008, at the hearing on the complaint, defendants produced for the first time a settlement agreement between Hartz and the association, by which Hartz agreed to repay the approximately $90,000 it owed the association for the operating deficits. The defendants told the court that this agreement obviated most of Plankett's complaint, and the court dismissed the complaint, stating that it was relying on the defendants' arguments. In January 2009, Plankett filed an amended complaint, and on April 8, the circuit court dismissed the entire complaint pursuant to Section 619. This was error. The defendants never challenged the slander and intentional infliction of emotional distress complaints under Section 2619. Instead, the defendants contend that Count 1 does not state a cause of action because stating that a person has been arrested is not slander, and of course it is not slander because that is just reporting a fact. However, that's not what happened in this case. Linda Hartz did not state that the plaintiff had been arrested, which, if it had occurred, would have been merely reporting a fact. Instead, Linda Hartz stated that the defendants could have Joanne Petrula arrested at any time and let off in cuffs. And every person at that election understood, to plain English, that Linda Hartz was imputing that Joanne Petrula was committing a crime every time she entered the courthouse. Excuse me. She entered the clubhouse. And that is slander, per se. As to the IIB... The crime being trespass. Pardon? Crime being criminal trespass. Yes. Yes, she did not explicitly say that, but that was the context in which it was spoken. As to the IIED counts, defendants contend that the allegations were not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress. But the facts are otherwise. The Hartzes were loaded with power and authority. They completely controlled the association, the management, the clubhouse, the clubhouse staff, the newsletter, and all information about the development. They used their control of the keys and their bully pulpit to coerce plaintiffs to sign a wave of rights to safe facilities. Plaintiffs sent three letters to the defendants detailing the extreme emotional distress caused by the banning and the harassing when she did enter the clubhouse. She had piercing and spasmodic headaches, nausea, loss of appetite, loss of weight, sleeplessness, anxiety, deep depression. Having moved into an association and being barred from what is the reason for the existence of such an association. But then nonetheless, the loss continued and the management for six months. The defendants also knew that the plaintiff was in her 70s and under doctor's orders to avoid stress and exercise. And this injectment would have gone on indefinitely unless the plaintiff in her desperation did not consult four attorneys and prepare a declaratory judgment. And when that was, this was a draft, it was never filed. When that was sent to them, then they capitulated and agreed that she was free to use the facilities without signing the waiver and identification. But as stressful and attenuated as the injectment was, the slander is worse because that continues to the present day, the effects of that. Lynn Hartz's statements poisoned Plaintiff's entire life in the community, made her a pariah and an object of controversy. She is still subjected to insults and fellow association members who believe that she is a danger to the community and is illegally entering the clubhouse because there has never been a public retraction in spite of Plaintiff's two letters to the defendants. And presumably they think the developer knows what he's talking about and this is the developer speaking. Living under this unjust cloud is outrageous and intolerable. As to the fiduciary breach, the circuit court dismissed all of the counts for lack of standing. This was error. Defendants challenged plaintiff's standing only as to a very miniscule part of the counts, as to the parts dealing with the defendant's failure to establish a reserve fund for three and a half years and also their failure to serve or to supply the plaintiff with accurate credential reports because the reports said nothing about reserve fund or operating fund or any of those essential parts. As to the other allegations, the main ones, the defendants asserted two defenses. First, they denied a clear state of the law when they argued that they were not required to obey two Illinois statutes requiring notice and open board meetings and board minutes beginning when the declaration was recorded. The defendants made the same incorrect legal assertions in their replies in support of their motions to dismiss plaintiff's complaints. Finally, defendants assert that the exculpatory clause in the declaration immunizes them from liability. It does not. Their breaches were not mere mistakes and were not mistakes of judgment. They had nothing to do with the exercise of business judgment because repeatedly violating statutory law is certainly not the exercise of business judgment. And banning a plaintiff from her courthouse based on her refusal to sign away her rights is not the exercise of business judgment, and slandering a candidate for board office is certainly not the exercise of business judgment. The defendants acted with malice to discredit the plaintiff because she alerted other association members to defendants' failure to follow the law and administering the associations. It was an especially malicious breach of fiduciary duty for Linda Hartz to slander the plaintiff by imputing she was committing criminal acts every time she entered the clubhouse and that she was a danger to other members. She blatantly told association members how to vote because she wanted to keep off a member that the developer did not like and could not control off the board. It's certainly an egregious breach of fiduciary duty for any director to blackball a candidate for a board office and prejudice a board election. That's outlandish. But when that director is also the developer's representative and it's a turnover election from the developer to homeowners, then such conduct makes a mockery of both turnover and fiduciary duty. In sum, plaintiff asks this court, respectfully, to reverse the dismissal and to permit her to pursue relief for her injuries. Are there any questions? No. Thank you, Ms. Petula. Thank you. Ms. Driscoll. May it please the court, counsel? I first would like to correct, well, discuss the judge's ruling in this case. He did, if you read the report proceedings at pages 16 to 17, the court says that he is dismissing the complaint pursuant to 2619.1, which allows a defendant to raise both a 2615 and a 2619 grounds to dismiss a complaint. He further does say that he's dismissing counts 1 through 3 pursuant to 619, but he gives a reason, which is the lack of sufficiency of the complaint. So in effect, the court erred in citing the wrong rule. Insufficiency of the allegations of the complaint relates to section 2615, which is the basis that we move to dismiss counts 1 through 3. As to counts 4, 5, and 6, 4 and 5 are against Linda Hartz and Donald Hartz for retributionary duty. Counsel is correct that we only move to dismiss on the basis of standing with respect to four subparagraphs of paragraphs 108 and 115 in the complaint, which had to do with the reserve funds. We did raise other affirmative matter in our motions to dismiss under 2619 to dismiss the other subparagraphs on the retributionary duty counts, and we believe the court can consider those reasons as a reason to support the dismissal of the counts 4 and 5 here today. As to the slander counts, I'm sorry, the slander counts, which is count 1, as to Linda's statement that we couldn't have her arrested at any time and let out in cuffs, as we cited in our argument, our motion to dismiss, and the plaintiff has conceded that she was seeking to prove slander based on a slander per se, but that statement does not qualify as a slander per se statement. It does not impute the commission of a crime. We've cited two cases right on point, Adams and the Chung Boyce cases, where, as in this instance here, it does not say she has been arrested. It does not say what crime she could have been, that she committed, and these two cases say that even a statement of an arrest is not the same as the person committing a crime. In the plaintiff's brief, she cites two cases, Van Horn and Seinfeld, but those cases, the plaintiff was actually, one, in Van Horn, the plaintiff's statement was that he had committed a criminal assault, and in the other, the plaintiff said that he had embezzled from his, the plaintiff, I'm sorry, the defendant stated that the plaintiff had embezzled from his employer. So those are clear, assertive statements of an active commission of a crime that would qualify for slander. Here, you would need extrinsic evidence to determine what the crime was, and that would make it slander per qua, and there are special additional proofs that a plaintiff would have to, and allegations that a plaintiff would have to make with respect to establishing special damages. Here, she did not, hasn't alleged specific damages as to her damage to her reputation. There were just general statements of loss of her reputation in the community, and that she, in paragraph 46, and also that she was exposed to insults. Neither cases have rejected those general statements, and I might also point out that we argued this in our motions to dismiss. The plaintiff did not respond in her response brief on her motions to dismiss, nor has she responded in her briefs here to the court as she has not established, or argued that she has established or applied special damages. So, at a minimum, she would have waived that argument. On the intentional infliction of emotional distress, the plaintiff's complaint basically alleged three incidents at the clubhouse, one on March 26th and one on March 27th, and then an undated incident at the pool. The statements, what she pled, was that she was ordered to leave the clubhouse. The clubhouse director called her a troublemaker and a rule breaker. But these are not sufficient allegations to establish the outrageousness that is necessary for an intentional infliction of emotional distress claim. Even in a senior community where those things and adherence to rules is often very important? Well, it has to go beyond the bounds of normal decency and something that a no reasonable person is expected to endure. And here, you have to take into consideration whether the person was in a position of power. The plaintiff alleges that they were. Here, Linda and Donald did not make the statements. It was an employee of the management company, but it's evident. Which they control. That's true. So the question comes to, when you say a reasonable person, don't you think a reasonable person in a context, doesn't there have to be context to assess these things? Well, no. You have a disagreement over whether the plaintiff should be allowed on the premises because she did not sign a waiver and identification form that the association decided also. You know I'm talking about the statement being made. Well, and besides that, the plaintiff here is a lawyer and she immediately wrote letters to the association demanding action, apologies, and so forth. Wouldn't that lend itself to the feeling that the impact was great to her? That those statements were outrageous? Well, it's an objective standard. It's not how it, and that's what Dover is telling that city. So she had to judge it objectively, not how it affected this particular plaintiff personally. But all of this, as Justice Holdred said, all of this is in a context. Is it not? I mean in the context of the facts of the situation. Where she was, what she was trying to do, get into this place, who told her she couldn't, in what terms. Yes, but if you look at the allegations, it doesn't even... Not a platonic, reasonable person. Well, it doesn't say that she left the premises. There are other allegations that she did go on to the clubhouse property and participated in other activities. But doesn't she allege that she was forced to go to another park district? She says that for a week period of time. But you're saying that she never says she wasn't able to use the facility. Well, in her claim she says she was not allowed to use the facilities at all from March to September. That's not an accurate statement. She's identified three incidents, and they're isolated incidents over a six-month period of time. So you're saying that in order to say that you cannot come in somewhere when you haven't signed this document, that she'd have to come every day and be refused every day. She was already on the premises. It was not that she was barred from entering. The incidents, she was already on the premises, participating in activities. So I don't understand, she was thrown out after... Well, no, there's no allegation that she was physically thrown out. The clubhouse director asked her to leave. There's no allegation as to whether she did, in fact, leave. Would she have to leave, though? I think you're saying you think that's the threshold action that has to be demonstrated. Well, that's not even relevant in terms of the intentional infliction of emotional distress. It's the effect of whether the person suffered severe emotional distress based on this activity. So it's not their placement on the premises. It's that question you just articulated. We're just saying our argument is that it wasn't sufficiently egregious and outrageous. But I disagree with you. How can you say that whether or not she had the right to be there doesn't play into it? I mean, if I am an employee and I stop someone from doing something that they don't have any right to do, that they cannot do, then that's different than me saying, get out of here, you need to sign this, when you know, really, that they don't have to sign it. Isn't that a different... That's not been actually, that issue, the legality of the requirement to sign the waiver in the indemnification form has not been before the court and has not been decided. In fact, it's a rule that the, I believe, is still being enforced by the new board, the member elected board. But at that time, it had not been decided as to this individual and it was being challenged, correct? Well, she did write letters and eventually... Well, you said she wrote, I mean, her letters said she didn't think that this was right. I mean, you know, you're talking about walking around this and her letters, doesn't she challenge the legality? She does challenge it, but Your Honor, the question here is whether the statements made to her were of such a severe nature that it would warrant recovery for emotional distress. And we, you know, our argument is that it doesn't. These are insults, indignities, annoyances, petty oppressions that are not recognized. There is a flood house, floodgate concern with, you know, if the court allows any, you know, incidents where people have disagreements and there's name calling and violations, according to the association, they believe she was violating a rule. Now, the plaintiff believed not, but that's not an issue here. The question is the conduct of the association, how they treated her, and they asked her to leave. This person may have, you know, called her names, but that's not, and under the case law, that's not sufficient to allow an intentional infriction of emotional distress cause of action. We've cited numerous cases in our briefs, the extremities of the situations and the facts that have to be demonstrated in order to establish the outrageousness of the conduct. If I can proceed, and there's also issues, the knowledge of special susceptibilities. We don't, the plaintiff, the only allegations she makes is her age and then that she's under the doctor's orders to avoid stress and exercise, but that's everyone, and that's a situation that would be applicable to everyone to avoid stress and to exercise. The duration, we say it was very limited based on those limited incidents, and the damages she alleges are, she does, verbatim from cases, the general sufferings of depression and so forth, but as you can see from her letters, she contacted the association, demanded retractions, apologies, and so forth. There's no evidence, there's no allegation that she even received medical attention or sought medical attention. Do you need special damages and intentional affliction of emotional harm action? You need evidence, you need to establish, you need allegations to establish, you can't just allege these conditions. As for emotional harm. Yeah, and if I can briefly get to the breach of judiciary due to counts, the reserve issues, we've argued that was totally a matter for the new court, they only have the right to assert the matter of the reserves, and the plaintiff had no standing. That's our standing argument that the charged court agreed with. Our other affirmative action... I mean, that was dealt with right in the first complaint when it was dismissed as to the association. There was an agreement, right, that the money that they... Yes. Yeah, that's all been resolved. The proper party asserted the right, and it's been resolved. As to the other allegations, the banning from the clubhouse, it's a moot issue. We also believe that the exculpatory clause applies here. It's a matter of, it's a mistake of judgment. If, in fact, the homeowners association, the developer board was wrong in requiring the indemnification form to be signed, that's a matter of, it's a mistake of judgment. It's not any bad faith here, and that would exculpate the developer board under section 5.10 of the LIGO declaration and section 1.2B of, well, that's, I'm sorry, only the LIGO association would be relevant to... Who has standing on the reserve funding before the turnover? Because this is apparently three years, three years people's money was taken and it wasn't put where it was supposed to be, right? Yeah, some of the reserve funds were mixed with the, were all held in an operating fund. I suppose that you could have the unit owners bring, it would be a derivative action, but they would have to go through the proper procedure. They would first have to make a demand on the board. The individual? Yeah. The whole unit? Yeah, the individual. Right, the individual unit owners would have to make a demand or allege that it was futile to make a demand on the board and then file a lawsuit, but here that wasn't the situation. But the inquiry was made by the plaintiff, wasn't it? During that time before the turnover? Yes, she did make some inquiries about that. Implications being that it actually did then force them to do their obligation by the time the turnover occurred or shortly thereafter? Probably before as well, but when the new board took over, there was an audit conducted, which is not to say that it wouldn't have been done anyway under normal procedures, and the shortfall was remitted to the association. I do want to make one comment on the failure to hold board meetings. A developer board is not required to hold board meetings. The plaintiff has cited no statutory or provision in the declarations or the bylaws that would have required the developer board to hold meetings. We've cited the provisions in our brief. The Lago Vista, the Section 5.6 requires the first meeting of the board, which is held after the turnover. 5.8 says to follow the Section 5.06 of the bylaws, which requires four meetings. But if you look at Article 5 in the bylaws, there's a Section 5.2 that applies to the declarant board and it makes no reference to the requirement to hold any meetings. For all the reasons I've argued today and in our briefs, I would request that the court affirm the charge of dismissal of the plaintiff's amended complaint. Thank you. Thank you, Ms. Driscoll. Ms. Petula for a reply. As to the two cases that the defendant cited related to the Slater account, Adams v. Sussman, interim law v. standard railroad equipment, plaintiff did respond to those in both their replies to their motion to dismiss and stated, and this is the case, that in those cases, the plaintiffs only reported that they believed somebody did have maybe a drug background or had been arrested. They never stated or imputed that the defendant's, or rather the plaintiff's, they never stated that the plaintiff had, in their opinion or as a fact, could be arrested or was guilty of a crime. So those cases are not at point. And I'm sure if your honors will read them, you'll see that. Or you have. I don't know why you haven't. As to the IIED complaint, the fact that the plaintiff was banned is a huge burden. It is true that after a week of going to the park district, because of the shock of being yelled at and banned, the plaintiff went to the park district and used those facilities because she had to exercise for her health. But after that, knowing that she had a perfect right to go back, she went back. But it took all of her courage and determination each time to enter that door, not knowing whether she was going to be confronted, insulted, which often happened, challenged. It is outrageous that her right to use these facilities that she paid for and partially when she bought her home and that she was supporting through her assessments, that she was being banned from them like a criminal. It is not a case that she has to be ejected physically every day or even yelled at every day. She was under this ban. Other people knew about this. She was being considered an outlaw to the association. And none of this was done by a member-elected board. None of this was done by the association. All of this was done for three and a half years by the developer, by the developer-controlled board. It had nothing to do with members voting on this. It had nothing to do with the adoption of a valid rule. These were not the dictates of the members of the association. As to the duties of a board, the statute could not be more clear in case law, numerous cases that all duties begin at the recording of the declaration, which in this case was December 13, 2004, at the very beginning of the association. Defendants keep quoting some things from the declaration. The declaration was drafted by the developer. The declaration already is incorrect because it said five years and a minimum for turnover. That was wrong, too. You cannot supersede statutory law by what you put in the declaration. So that argument is really irrelevant,  There's awkward wording in the declaration, but it doesn't say that the developer doesn't have to hold open board meetings and get notice and hold minutes. It's ridiculous to conduct an association or a corporation, which it also is, that's where the two statutes come in, and not have this, not have these records of the decisions. You're dealing with the millions of dollars of property here. I'm not sure if I've answered all of your questions. I don't see any further questions. Thank you, Ms. Petula. Thank you. Thank you both very much for your arguments here today. This matter will be taken under advisement, and a written decision will issue in due course.